IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
CENTERAL DIVISION

| | |
|---|---|
| MARY MISS<br><br>Plaintiff<br><br>v.<br><br>EDMUNDSON ART FOUNDATION, INC., d/b/a DES MOINES ART CENTER<br><br>Defendant | CASE NO. 4:24-cv-00123<br><br><br>**VERIFIED APPLICATION FOR RULE 65(b)(1) TEMPORARY RESTRAINING ORDER; EXPEDITED RELIEF REQUESTED - AND COMPLAINT** |

COMES NOW, the Plaintiff, by and through the undersigned, and in support of her application for a temporary restraining order and complaint upon the merits, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Mary Miss is a nationally renowned artist and is a resident of New York.

2. Defendant Edmundson Art Foundation, Inc., d/b/a Des Moines Art Center (hereinafter "Art Center"), is an Iowa 504 Domestic Non-Profit organization, with its principal place of business in Des Moines, Polk County, Iowa.

3. Jurisdiction and venue are proper in Polk County, Iowa, as it is where the Defendant can be said to reside, the Plaintiff and Defendant are the parties to a contract that contemplates performance in Polk County, and the subject of the contract is an existing art installation located in Des Moines, Polk County, Iowa.

4. The Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) with respect to the claims arising under the Visual Arts Rights Act of 1990 (17 U.S.C. § 106A) [hereinafter "VARA"], and supplemental jurisdiction with respect to the common law claims pursuant to 28 U.S.C. § 1367(a).

1

## FACTUAL ALLEGATIONS

### I. Contractual Agreement

5. Plaintiff reasserts the preceding paragraphs as if fully set forth herein.

6. On or about April 4, 1994, the parties entered into a written agreement [hereinafter "the Agreement"] wherein Plaintiff agreed to accept compensation for creating and installing an art project known as "Greenwood Pond: Double Site," [hereinafter "the Project."] located in Greenwood Park in the City of Des Moines Iowa.

7. A copy of the Agreement is attached hereto as **exhibit 1**.

8. The Agreement provides, in pertinent part, that upon the completion of the Project the Art Center would receive title to the Project. See **exhibit 1**, section 8.

9. However, the Agreement further provides that "Art Center agrees that it will not intentionally damage, alter, relocate, modify or change the [Project] without the prior written approval of the Artist...Art Center shall notify the Artist of any proposed alteration of the Site that would affect the intended character and appearance of the Work and shall consult with the Artist in the planning and execution of any such alteration and shall make a reasonable effort to maintain the integrity of the Work." **Ex. 1**, Section 8.2(i), (ii).

10. In connection with its ownership of the Project, the parties further agreed to the following:

    a. "Art Center recognized that maintenance of the Project on a regular basis is essential to the integrity of the Project. Art Center shall reasonably assure that the Project is property maintained and protected, taking into account any instructions provided by the Artist, and shall reasonably protect and maintain the Project against the ravages of time, vandalism and the elements." *Id.*, section 9.2
    b. "Art Center shall have the right to determine, after consultation with a professional conservator, when and if repairs and restorations to the Project will be made. During the Artist's lifetime, the Artist shall have the right to approve all repairs and restorations, provided, however, that the Artist shall be paid a reasonable fee for any such services, provided that the Art Center and the Artist shall agree in writing, prior to the commencement of any significant repairs or restorations, upon the Artist's fee for such services." *Id.*, section 9.3

11. The Agreement further provides that "the covenants and obligations set forth in this Article shall be binding upon the parties, their heirs, legatees, executors, administrators, assigns, transferee and all their successors in interest, and Art Center's covenants do attach and run with the Work and shall be binding to and until twenty (20) years after the death of the artist.
12. Finally, the Agreement provides that there is no limitation on the Plaintiff's "rights and remedies available…under the Visual Arts Rights Act of 1990 or under any other law which may now or in the future be applicable." **Ex. 1**, section 8.7.

## II. Recent Developments

13. Plaintiff completed the Project on a timely basis, and since that time the people of the City of Des Moines have been enjoying the Project.
14. The Project has been recognized for its stature on numerous occasions by artists, art scholars, art patrons, art critics, architects, and City Commissioners. See https://www.tclf.org/feature-type/greenwood-pond-double-site-letters-support (last visited April 3, 2024).
15. Former Whitney Museum of American Art Director Max Anderson said the Project "enjoys an importance and a prominence in public art second to none in this country." See https://www.tclf.org/demolition-mary-miss-greenwood-pond-double-site-could-start-april-des-moines-art-center-director (last viewed April 3, 2024).
16. Despite the clear and unambiguous terms of the Agreement, after failing to reasonably protect the Project from the ravages of time and the elements, the Arts Center has announced its intention to demolish the Project.
17. On October 20, 2023, Kelly Baum, Director of the Art Center, contacted Plaintiff via email to state that parts of the Project were being immediately closed to the public due to the poor condition it was in, admitting that the Project had "not

stood the test of time and weather," (the two elements the Art Center had agreed to protect the Project from). **Ex. 2, email exchange**.

18. Plaintiff was out of the county at the time the email was sent.
19. The very next day, on October 21, 2023, Ms. Baum informed Plaintiff that not only was part of the Project being closed to the public, but was also already in the process of being demolished. *Id.*
20. After demolishing part of the project without Plaintiff's permission – a clear breach of contract – the Art Center then informed Plaintiff on December 1, 2023 that it would have to "decommission" the entire Project and remove it, stating that it could "see no other way forward." *Id.*
21. The Art Center has since made public statements confirming that this is their plan, and that it could start as early as next week. **See exhibit 3 – Des Moines Register Article.**
22. Defendant has received a permit from the City of Des Moines for the demolition of the project. See **exhibit 4 – permit for demolition**.
23. Plaintiff was not consulted on this decision.
24. Plaintiff did not approve of this decision.
25. Plaintiff has sought to receive a copy of the structural report Defendant claims to have in its possession relating to the Project.
26. Defendant has refused to provide a copy to the Plaintiff.
27. Defendant has refused to disclose whether it has made any attempt to maintain the Project over the past ten years.
28. Defendant has failed to disclose whether it has explored other, more reasonable options for the preservation of the Project, besides its complete destruction.
29. The Art Center's unilateral decision to remove the Project is a clear breach of contract and a violation of VARA.

## COUNT I – TEMPORARY RESTRAINING ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(b)(1)

30. Plaintiff realleges the preceding paragraphs as if fully set forth herein.
31. Plaintiff is entitled to a temporary restraining order in this matter in order to preserve the status quo pursuant to 17 U.S.C. § 502 and 17 U.S.C. § 106a.
32. 17 U.S.C. § 502(a) specifically permits the issuance of a temporary injunction "on such terms as [the court] may deem reasonable to prevent or restrain infringement of a copyright."
33. In the Agreement, Plaintiff reserved all her rights under the Copyright Act of 1976. Ex. 1, section 5.
34. VARA grants to the Plaintiff the right to prevent the destruction of the Project at issue as it is a work of recognized stature. *Phillips v. Pembroke Real Estate, Inc.*, 288 F. Supp.2d 89, 97 (D. Mass 2003); 17 U.S.C. 106(a)(3)(A)-(B).
35. Plaintiff retains her rights under VARA even though ownership of the work has been transferred to Defendant. *Carter v. Helmsley-Boear*, 71 F.3d 77, 81 (2d. Cir. 1995).
36. The Project meets the requirements of the "recognized stature" test, in that it is viewed as meritorious and is and has been recognized by art experts, other members of the artistic community, and by cross-sections of society. *Id. See* https://www.tclf.org/feature-type/greenwood-pond-double-site-letters-support
37. A temporary restraining order is necessary as the Defendant has already publicly announced its intention to demolish the Project and has received a permit from the City of Des Moines to accomplish the same. See **exhibit 3, 4.**
38. Defendant has announced that the demolition will begin as early as next week. *Id.*
39. The project is an original work of art and cannot be found anywhere else on planet Earth. Its destruction is its extinction.

40. Plaintiff prays, given the singular nature of the Project, the resulting irreparable harm that will arise from its destruction, and the impending commencement of its destruction, that this Court enter a Temporary Restraining Order without notice.
41. The undersigned certifies that a copy of this Complaint and request for injunction has been served upon counsel for Defendant, who is identified at the end of this complaint. FRCP 65(b)(1)(B)
42. Plaintiff has verified the allegations set forth in this Complaint as required by FRCP 65(b)(1)(A).
43. Plaintiff prays that the Court enter a temporary restraining order prevent the Defendant from demolishing the Project until such time as the matter can be set for a hearing.  F.R.C.P. 65(b)(2)-(3); F.R.C.P. 65(d).

WHEREFORE, Plaintiff prays the Court enter a Temporary Restraining Order preventing the Defendant from commencing with any further demolition of the Project until such time as the matter can be set for a hearing and a determination as to the proper length for injunctive relief can be determined.

### COUNT II – CIVIL RECOVERY PURSUANT TO 17 U.S.C. SECTION 504

44. Plaintiff realleges the preceding paragraphs as if fully set forth herein.
45. The contract of the parties reserves to the Plaintiff all rights and remedies available to her under VARA.  Ex. 1, sec. 8.7.
46. In addition to the injunctive relief set forth above, Plaintiff is also entitled to statutory damages under 17 U.S.C. §504, as the Project is protected by the Copyright Act of 1976.
47. Defendant has admitted that it has willfully demolished part of the Project, and intends to willfully demolish the remainder.

48. Pursuant to 17 U.S.C. §504 (c)(2), Plaintiff is entitled to damages in an amount not to exceed one-hundred and fifty thousand dollars ($150,000.00), for this intentional destruction of Plaintiff's artwork.
49. As a result of Defendant's willful acts of destruction, Plaintiff is also entitled to reasonable attorney fees.

WHEREFORE, Plaintiff prays the Court enter judgment against the Defendant in an amount not to exceed the statutory cap of $150,000.00, plus interest, costs, and reasonable attorney fees, and provide all other relief as the Court deems fair and equitable, all as provided by law.

### COUNT III – BREACH OF CONTRACT - SPECIFIC PERFORMANCE

50. Plaintiff realleges the preceding paragraphs as if fully set forth herein.
51. The Court has supplemental jurisdiction over this claim by virtue of 28 U.S.C. § 1367 (a) because the contract in dispute arises from the same case or controversy giving rise to the Plaintiff's claims under VARA.
52. The Agreement between the parties states that the Defendant shall be responsible for ensuring that the Project shall be reasonably protected from the "ravages of time," and "the elements."
53. Defendant has announced it has no intention of abiding by the terms of the Agreement, and instead of caring for the Project will instead scrape it from existence, demolishing it in its entirety.
54. Plaintiff has performed all of her obligations under the contract.
55. The Court has the authority to order specific performance of the terms of the contract.

56. Defendant has required Plaintiff to seek specific performance. Plaintiff is entitled to an award of reasonable attorney fees as a result. *Berryhill v. Hatt*, 428 N.W.2d 647 (Iowa 1988).

WHEREFORE, Plaintiff prays the Court enter judgment against the Defendant, directing the Defendant to specifically perform the terms of the contract, and further enter an award for reasonable attorney fees in Plaintiff's favor, and provide all other relief as the Court deems fair and equitable, all as provided by law.

### COUNT IV – BREACH OF CONTRACT – REPUDIATION/ANTICIPATORY BREACH

57. Plaintiff realleges the preceding paragraphs as if fully set forth herein.
58. The Court has supplemental jurisdiction over this claim by virtue of 28 U.S.C. § 1367 (a) because the contract in dispute arises from the same case or controversy giving rise to the Plaintiff's claims under VARA.
59. Plaintiff asserts this claim in the alternative to Count III – Specific Performance.
60. The Agreement between the parties states that the Defendant shall be responsible for ensuring that the Project shall be reasonably protected from the "ravages of time," and "the elements."
61. Defendant has announced it has no intention of abiding by the terms of the Agreement, and instead of caring for the Project will instead scrape it from existence, demolishing it in its entirety.
62. Plaintiff has performed all of her obligations under the contract.
63. Defendant's words and actions demonstrate it has repudiated the contract and has no intention to abide by its terms.
64. Plaintiff is entitled to damages in an amount to be proven for Defendant's repudiation and breach of the contract.

65. As a result of Defendant's repudiation of the contract, Plaintiff is entitled to an award of reasonable attorney fees. *Berryhill v. Hatt*, 428 N.W.2d 647 (Iowa 1988).

WHEREFORE, Plaintiff prays for judgement against the defendant in an amount to be determined at trial, plus costs and interest, and reasonable attorney fees, all as provided by law.

## JURY DEMAND

Plaintiff prays for a trial by jury on all issues so triable.

Respectfully submitted,

**WANDRO KANNE & LALOR, P.C.**

*/s/ Ben Arato*
Alison F. Kanne        AT0013262
Benjamin G. Arato      AT0010863
2015 Grand Avenue Suite 102
Des Moines, IA 50312
Telephone: (515) 717-7455
Facsimile: (515) 608-4645
Email: akanne@wandrolaw.com
          barato@wandrolaw.com

## CERTIFICATION PURSUANT TO F.R.C.P. 65(b)(1)(B)

I hereby certify that a copy of this application and complaint, together with all attachments referenced herein, have been delivered via email to the following person(s), who is understood to be counsel for Defendant based upon communications reviewed. I further certify that the reasons for why notice should not be required prior to the issuance of a temporary restraining order are set forth in this application and complaint.

Michael S. Boal
Belin McCormick
666 Walnut St., Ste. 2000
Des Moines, IA, 50309-3989
msboal@belinmccormick.com

Date:  April 4, 2024                                              /s/ Ben Arato

## VERIFICATION PURSUANT TO F.R.C.P. 65 (b)(1)(A)

My name is Mary Miss and I am the Plaintiff in the above captioned action. I have reviewed the application and complaint and I swear and affirm it is true and accurate to the best of my belief.

Date: Apr 4, 2024

*Mary Miss* (signature)
Mary Miss.

# Miss complaint and application for temporary restraining order

Final Audit Report          2024-04-04

| | |
|---|---|
| Created: | 2024-04-04 |
| By: | Madison Laing (mlaing@wandrolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAALxT1e2kJHnD3u4HtR4VS5k9tgvMumvCc |

## "Miss complaint and application for temporary restraining order" History

- 📄 Document created by Madison Laing (mlaing@wandrolaw.com)
  2024-04-04 - 3:05:28 PM GMT- IP address: 204.131.252.4

- 📧 Document emailed to Mary Miss (studio@marymiss.com) for signature
  2024-04-04 - 3:06:21 PM GMT

- 📄 Email viewed by Mary Miss (studio@marymiss.com)
  2024-04-04 - 3:33:04 PM GMT- IP address: 172.225.132.104

- ✍️ Document e-signed by Mary Miss (studio@marymiss.com)
  Signature Date: 2024-04-04 - 4:04:08 PM GMT - Time Source: server- IP address: 141.155.144.84

- ✅ Agreement completed.
  2024-04-04 - 4:04:08 PM GMT

Adobe Acrobat Sign