IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MARY MISS, | ) ) | CASE NO. 4:24-CV-00123 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| EDMUNDSON ART FOUNDATION, INC. d/b/a DES MOINES ART CENTER, | ) ) ) ) | **BRIEF IN SUPPORT OF MOTION TO DISSOLVE OR OTHERWISE MODIFY PRELIMINARY INJUNCTION** |
| Defendant. | ) ) | |

Defendant Edmundson Art Foundation, Inc. d/b/a Des Moines Art Center (the "Art Center"), by and through the undersigned counsel, hereby submits this Brief in Support of its Motion to Dissolve or Otherwise Modify Preliminary Injunction.

## FACTUAL BACKGROUND

On July 17, 2024, the Art Center was ordered by the City of Des Moines to repair or remove key structural elements of the Double Site from Greenwood Park (the "City's Order"). The Art Center understands the Court is very familiar with the factual background of this dispute and therefore only provides a brief overview of relevant facts related to this significant change of circumstances.

As the Court knows, in 1990, the Art Center and the City of Des Moines entered into a 28E agreement (the "Operating Agreement") related to the ownership, installation, and maintenance of outdoor installations in Greenwood Park. (ECF No. 10-1, Ex. A.) Relevant here, Section III(A) of the Operating Agreement permits the City to "require the ART CENTER to repair or remove a structure if the ART CENTER has failed to either maintain the structural integrity of a sculpture or to correct any unsafe condition within a sculpture." (*Id.* at 5.) If so ordered, the Art Center has a "reasonable time" to take corrective action, which the Agreement generally defines as 15 days.

(*Id.* at 6.) The Operating Agreement also provides that any collateral agreement between the Art Center and an artist for works in Greenwood Park "shall be subject to the terms of this agreement." (*Id.* at 13.)

The 1994 Agreement for Artistic Services between the Art Center and Mary Miss (the "Artist Agreement") is "subject to the terms of the 28E agreement between the City and the Art Center." (ECF No. 10-1, Ex. C at 10.) The Artist Agreement also addresses ongoing care of the Double Site through three distinct provisions: maintenance, repairs and restorations, and alterations. The Artist Agreement gives the Art Center the right to decide "when and if repairs and restorations … will be made." (*Id.* at 8.) It also limits the Art Center's ability to "intentionally damage, alter, relocate, modify, or change the Work" without the artist's approval. (*Id.* at 7.)

As detailed during the hearing on preliminary injunction, in the fall of 2023, the City's Parks and Recreation Department passed along concerns to the Art Center raised by local citizens about safety concerns at the Double Site. (ECF No. 28 at 4.) The Art Center conducted a walk-through of the Double Site with its own staff, then retained an engineering firm to assess the unsafe conditions. (*Id.* at 5.) In October 2023, a structural engineer concluded there were significant structural concerns at the Double Site creating life safety/liability issues. (*Id.*) The structural engineer recommended that the Art Center close off access to multiple elements of the Double Site given those life safety concerns. (*Id.*) Rather than repair or restore multiple elements of the Double Site to correct the unsafe conditions, the Art Center decided to remove the Double Site. This lawsuit followed.

In its May 3 Order granting preliminary injunctive relief, this Court recognized there was no evidence in the record—at that time—to indicate the City had required the Art Center to repair or remove the Double Site consistent with the Operating Agreement. Accordingly, the Court

2

enjoined the Art Center from removing the Double Site pending trial or "other developments impacting the Court's analysis of the parties' respective rights and obligations." (ECF No. 28 at 19.)

Subsequently, on July 17, 2024, the Art Center received a letter from Des Moines City Manager Scott Sanders. (Baum Decl., Ex. A). The letter incorporates by reference an inspection report of the Double Site conducted by City officials in late May. (*Id.* at 3-4.) Those officials concluded the Double Site's boardwalk violates city ordinances and is unsafe due to dilapidation, decay, and structural instability. (*Id.*) Citing the underlying report, Mr. Sanders's July 17 letter concludes that the current condition of the Double Site's boardwalk "violates the City's Building Code as well as the Operating Agreement." (*Id.* at 1.) The letter continues:

> The structural integrity of elements of the Mary Miss Double Site, as detailed in the attached report of the City Building Official and Plans Examiner, is compromised and said elements are unsafe, therefore, as provided in said Section III.A of the Operating Agreement, **the City is requiring the Art Center to repair or remove the unsafe structural elements of the Mary Miss Double Site in a timely fashion** and in a manner and to the extent consistent with the requirements of the Order Granting Motion for Preliminary Injunction, Case No. 4:24-cv-00123-SHL-SBJ.

(*Id.*) (emphasis added). The City also found issues with other key design elements of the Double Site. Specifically, the City noted (1) the retaining walls (or terraces) "exhibit deterioration, separation, and missing stonework," (2) the Warming Hut is closed off and was found by the Art Center not to be structurally sound, and (3) the "water trough" "appears to be unsafe for the public use intended by the artist's design." (*Id.* at 2.) As a result of these findings, and "[i]n accordance with Section III.A of the Operating Agreement," the City directed, "the Art Center is responsible for the maintenance of these design elements and the City expects them to be remedied as well." (*Id.*)

3

**ARGUMENT**

I. **THE CITY'S ORDER CONSTITUTES A CHANGE IN CIRCUMSTANCES THAT REQUIRES THE COURT TO LIFT OR OTHERWISE MODIFY THE MAY 3 PRELIMINARY INJUNCTION.**

This Court sits in equity and therefore has wide discretion to dissolve the preliminary injunction previously entered in this case. *See Am. United for Separation of Church & State v. Prison Followship Ministries*, 555 F. Supp. 2d 988, 991 (S.D. Iowa 2008) (citing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). Dissolution is warranted "when there has been a change of circumstances…that would render the continuance of the injunction in its original form inequitable." *Ahmad v. City of St. Louis*, 995 F.3d 635, 640 (8th Cir. 2021) (quoting *Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993)); *see* Fed. R. Civ. P. 60(b)(5). In other words, a preliminary injunction should be modified or dissolved "if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Ahmad*, 995 F.3d at 640 (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)).[1]

The City's Order is certainly a significant development in this litigation. Indeed, considering the Court's interpretation of the interplay between the Operating Agreement and the Artist Agreement, the absence of a directive from the City proved dispositive at the preliminary injunction stage. As this Court recognized in its May 3 ruling, without City involvement, the Art Center had no unilateral authority to remove the Double Site over Miss's objection. (ECF No. 28 at 11.) Yet, according to this Court, "Paragraph III.A of the 28E Agreement would supersede Section 8.2(i) of the Artist Agreement if the City required the Art Center to repair or remove the Site." (ECF No. 28 at 11.)

---

[1] In *Ahmad*, the Eighth Circuit applied the Supreme Court's standard from *Horne* to requests to modify or dissolve preliminary injunctions, even though "Rule 60(b)(5) on its face is limited to relief from final orders." 995 F.3d at 640.

The City has now acted.  The Art Center is required to "repair or remove the unsafe structural elements of the Mary Miss Double Site in a timely fashion," consistent with local ordinances and the Operating Agreement.  The preliminary injunction previously entered in this case must be reconsidered and ultimately dissolved given this change.

**II.     THE ART CENTER MUST BE PERMITTED TO REMOVE THE DOUBLE SITE IN ORDER TO SATISFY ALL CONTRACTUAL OBLIGATIONS.**

Prior to this litigation, the Art Center decided to remove the Double Site instead of replacing it or making significant repairs to many of its elements.  The Artist Agreement unambiguously gives the Art Center the right to refuse to repair or restore the Double Site over Miss's objections—especially when the evidence confirms the cost to do so is prohibitively high. (ECF No. 28 at 14.)  As a result, the Court correctly concluded there is no realistic outcome of this litigation in which the Art Center could be ordered to make repairs or restorations to the Double Site.  (*Id.*)

With that conclusion in mind, the "choice" presented by the City's Order (i.e., to "repair or remove" elements of the Double Site) is exclusively the Art Center's to make.  Nothing in the City's Order gives Miss a contractual hook to insist that the Double Site be repaired in lieu of removal.  The City exercised its rights under the Operating Agreement vis-à-vis the *Art Center*. The Art Center now has the right to exercise its rights under the Artist Agreement.  If Miss wanted the authority to require the Art Center to repair the Double Site under these circumstances, she could have negotiated for this right in the Artist Agreement.  Instead, the Artist Agreement is subject to the terms of the Operating Agreement.  The Art Center has not changed its position that it will not repair or restore the Double Site—a right it maintains under the Artist Agreement.  The Art Center's position leaves removal as the only available remedy to comply with the City's Order.

To comply with both the Operating Agreement and the Artist Agreement, the Art Center must be permitted to remove the Double Site in its entirety—not merely the "unsafe structural elements" cited by the City or those elements determined unsafe under local ordinance. For purposes of the Artist Agreement, the Double Site is one installation, a fact recognized by both parties to this litigation. (*See, e.g.*, ECF No. 15 at 8 ("GPDS is a unique piece of art that exists nowhere else in the world"); ECF No. 18 at 3 ("All elements taken together make up the Double Site, not its individual components.")) Removal of any one individual element of the Double Site—especially a key element such as the boardwalk or the sunken trough—necessarily affects the overall aesthetic of the installation and constitutes an "alteration" within the meaning of Section 8.2(i) of the Artist Agreement. (ECF No. 28 at 9; *see* ECF No. 10-1, Ex. C, at 7.) Thus, once the Art Center complies with the City's Order, the Double Site will have been fundamentally altered. It will no longer be "Greenwood Pond: Double Site," the installation the Art Center contracted to maintain (referred to as "the Project" in the Artist Agreement). Having agreed that the Art Center has the right to decide if and when repairs or restoration takes place, and having agreed the City can direct removal of the work, Miss cannot prevent the Art Center from determining the appropriate remedy to the City's directive.[2]

## **CONCLUSION**

The City's Order is a significant development in this litigation and therefore requires the Court to revisit the preliminary injunction issued May 3, 2024. Pursuant to the Court's conclusions in that Order and under Rule 60(b)(5), the Art Center respectfully requests the Court dissolve or

---

[2] To the extent the Court disagrees, the Court should nonetheless modify the preliminary injunction and allow the Art Center to remove individual elements of the Double Site determined to be unsafe and as necessary to comply with the City's directive.

otherwise modify its preliminary injunction to permit the Art Center to remove Greenwood Pond: Double Site to comply with all relevant contractual obligations.

    Dated this 26th day of July 2024.

                                  Respectfully submitted,

                                  BELIN McCORMICK, P.C.

                                  */s/ Wayne E. Reames*
                                  Wayne E. Reames
                                  Kelsey J. Knowles
                                  Michael S. Boal
                                  666 Walnut Street, Suite 2000
                                  Des Moines, IA  50309-3989
                                  Telephone: (515) 283-4631
                                  Facsimile:  (515) 558-0631
                                  wereames@belinmccormick.com
                                  kjknowles@belinmccormick.com
                                  msboal@belinmccormick.com
                                  ATTORNEYS FOR DEFENDANTS